IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTICT OF VIRGINIA

ALEXANDRIA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | |
| v. | ) | Case No. 1:09-CR-196-002 |
| | ) | |
| | ) | Hon. Claude M. Hilton |
| ROBERT YOUNG, | ) | |
| Defendant. | ) | Sentencing: Nov. 6, 2009 |

**DEFENDANT'S RESPONE TO GOVERNMENT'S POSITION WITH REGARD TO SENTENCING FACTORS AND GOVERNEMNT'S RESPONSE TO DEFENDANT'S POSITION REGARDING SENTENCING FACTORS**

The Defendant, Robert Young, by and through undersigned counsel, respectfully submits his response to both the Government's position with regard to sentencing factors and the Government's response to his original position with regard to sentencing factors.

We are mindful that we have previously filed a lengthy position regarding sentencing factors and will, therefore, be a brief as possible.

**A. Value of Fuel and Resulting Loss to the Government**

The Government originally claimed that the stolen fuel was valued at almost $40 million. Indeed one of the co-conspirators (Lee Dubois) has been sentenced with an allegation by the government of such an amount—an amount to which he agreed and the probation office in his presentence supported. This was one of the points upon which the parties could not agree when efforts were underway to reach a plea agreement. When Mr. Young objected to a $40 million figure being included in the presentence report, and presented government charts to prove the cost was much less, the probation office responded by stating that "the court need only make a

reasonable estimate of the loss" and, without one bit of supporting data from the government concluded that "the fair market value of the fuel taken was reasonably calculated at $39,651,936." (PSR page A-3)  To the credit of the government attorneys, once they saw that we were in possession of government fuel price charts they priced the fuel themselves and determined that the loss was now just over $26 million.  While the government still contends that the loss must be over $20 million and the resultant guideline does not change, we note that the government was off by over 30 percent in a figure they insisted the defendant accept as the loss amount; and as we noted in our original brief, we have yet to see pricing figures taking into account volume discounts, bulk purchasing discounts or other discounts that may apply.  The government, in short, has failed to prove what was actually paid—and we submit that, contrary to the probation office's allegation, we cannot simply accept a "reasonable estimate."  Finally, the government does not take into account the fact that the thefts did not all come at the hands of the defendants in this conspiracy, as there were various other theft rings operating at the same time; and the Government does not take into account that the indictment charges Mr. Young with theft only for the months of February to May, 2008.[1]  For all these reasons, we submit that Mr. Young, for guideline purposes, should be held accountable for a loss of from $7 million to $20 million.

### B.  Acceptance of Responsibility

Mr. Young was originally awarded a two level reduction for acceptance of responsibility but the probation office, in the final presentence report, decided he was not worthy of the 2 level reduction because he disputed several allegations made by the government, including the value of the fuel, which the government, by its own admission, was off by some $14,000,000.00.  We

---

[1] The Government's fuel charts appear to include fuel taken for the 3rd quarter of 2007, before the conspiracy is alleged to have begun.

presented our argument in full in our original filing.  Mr. Young self-surrendered, advised the government even before he surrendered that he intended to plead guilty, pled guilty without the benefit of a plea agreement and has admitted he stole fuel.  He should not be punished further simply because he is not willing, as the probation office apparently is, to take everything the government alleges as gospel.  He did not attempt to explain or justify his criminal activity, as the government alleged.  Rather his version of the how, when and where of this conspiracy is different than that of the Government.

Both the Government and the probation office also claim acceptance of responsibility should be denied because Mr. Young signed a Statement of Facts which acknowledges a gain of $1 million but that he now claims he only made $875,000.  This is a red herring.  First, the statement of facts was hastily put together before the plea because we had not reached a plea agreement and both parties wanted to have a statement of facts upon which the plea could be entered.  The version tendered to the Court was not finalized until minutes before the plea and the language to which the government refers has Mr. Young admitting to "approximately $1 million" in profits.  After a further review Mr. Young believes the profit was closer to $875,000, a figure that is of no consequence to anything other than his belief.  Even though this is his belief, Mr. Young agreed to have the Government file a stipulation to forfeit $1 million.

### C.  Attempts to Cooperate with the Government

The Government alleges that Mr. Young's claim that the Government would not allow him to cooperate is false, asserting that the Government's only requirement for any cooperation from Mr. Young was that he tell the truth.  This part is accurate.  The dispute lies with the fact that the government has always been unwilling to acknowledge that just quite possibly Mr. Dubois has not been entirely truthful with them.  Mr. Young was willing to tell the government

about other individuals involved in crimes against the government and to assist in the apprehension of these individuals.   He was not willing to blindly "sign on" to the Government's/Dubois' theory of the case.

We also believe it important that Mr. Young was subpoenaed by the Government to testify against Mr. Jeffrey, knowing that he would not testify as they wished.  He fought that subpoena but Mr. Jeffrey then sought his testimony.  He likewise fought that request until the Government granted immunity, thus forcing him to testify.  Mr. Jeffrey then decided not to call Mr. Young to the stand and the reason is obvious.  Mr. Young's testimony would not have been what either the Government or Mr. Jeffrey sought.  Mr. Young would not have backed Dubois' version of events, but neither would his version have exonerated Mr. Jeffrey.   Mr. Young's truthful testimony would have placed Mr. Jeffrey in the conspiracy, but for a very short period of time and nothing like what Dubois claimed.

**D.  Self Surrender—Early Plea**

The Government claims that Mr. Young did not voluntarily surrender to authorities shortly after commission of the offense and that he did not plead guilty until July 24, 2009, just two weeks before trial.  Both assertions are, on their face, true.  However both leave misleading impressions.   Mr. Young did not, contrary to the Government's allegation, flee to the Philippines.  Mr. Young had been living in the Philippines and once released from any prison sentence this Court imposes, will return there.  When Jeffrey was arrested Mr. Young surmised that there was likely a warrant for his arrest as well.  He contacted counsel and the parties negotiated his surrender in a fashion that avoided the Government having to take him into custody in the Philippines, and transport him to the United States.  He even paid his own way

back to Los Angeles and then to Dulles, where he took a cab to his attorney's office and then walked into court on his own. There is no gray area in this regard. He self-surrendered.

And while the plea did not take place until two weeks before his trial, the Government cannot claim that they ever thought he would proceed to trial. The only reason the plea did not take place earlier was because the parties could not agree on a version of events. When it became apparent no such agreement could be reached, Mr. Young decided to plead to the entire indictment with no agreement. And since the Government had to prepare for Jeffrey's trial, they can make no claim that they expended resources preparing for Young's trial.

### E.  Role in the Offense

We have made our argument previously as to Mr. Young's role in the offense. The Government attempts to bolster Dubois' version by picking a handful of e-mails from the hundreds if not thousands of emails intercepted. Mr. Young has offered his explanation of the messages at issue and the parties could argue forever as to, for example, what "quasi-legal" meant to Mr. Young. We believe that our version of Mr. Young's role in the offense is the more accurate and that under anyone's version, Mr. Young is no more culpable that Mr. Dubois or Mr. Maalouf or the Khalil brothers.

### F.  Mr. Young's Alcohol Problem

In our original filing we mentioned that Mr. Young had been evaluated for chemical dependency and mental health issues. Since that filing counsel have communicated with Neil J. Cervera, Jr., L.C.S.W., PhD., who evaluated Mr. Young on October 22, 2009, and whose testing confirms that Mr. Young has a long term alcohol dependency problem, which has led to high blood pressure, blackouts and short term memory loss. He also has high cholesterol and diabetes. Dr. Cervera also diagnosed Mr. Young with Post Traumatic Stress Disorder from his

Iraq experience, having witnessed six employees die.  He recommends that Mr. Young be detoxed from alcohol and participate in an alcohol dependency program while incarcerated.

### G.  Conclusion

We ask nothing more than a fair sentence for Mr. Young.  Fairness dictates that he be sentenced no more severely than Mr. Dubois.  Mr. Young self surrendered, admitted his guilt, and made partial restitution.  The government only asks that he receive a sentence more than three times that of Dubois because Mr. Young was unwilling to accept as fact the assertions of Dubois.  As we have seen with the cost of the fuel, blindly accepting facts leads to sever errors being made.  Mr. Young could have quite easily gone along with Dubois' assertions, accepted the allegations of his role and received a similar sentencing recommendation from the government as was recommended for Dubois.  But, just like the alleged $40 million dollar loss, it would have been wrong.  In fact, Mr. Young gains nothing from holding to the truth.  He has not absolved himself of the crime.  He has simply attempted to explain the role he played and how much he profited from the crime.  We pray that the Court sentence him to a term of incarceration no more than that received by Dubois.

Date: November 2, 2009                    Respectfully submitted,


                                          /s/ Claire Morris Clark
                                          Claire Morris Clark, Esquire
                                          Virginia Bar Number 73238
                                          Attorney for Robert Young
                                          Schertler & Onorato, LLP
                                          601 Pennsylvania Avenue, N.W.
                                          North Building, 9th Floor
                                          Washington, D.C. 20004
                                          Telephone:  (202) 628-4199
                                          Facsimile:  (202) 628-4177
                                          clark@schertlerlaw.com


                                          /s/ David Schertler
                                          David Schertler, Esquire
                                          *Pro Hac Vice* Counsel
                                          Attorney for Robert Young
                                          Schertler & Onorato, LLP
                                          601 Pennsylvania Avenue, N.W.
                                          North Building, 9th Floor
                                          Washington, D.C. 20004
                                          Telephone:  (202) 628-4199
                                          Facsimile:  (202) 628-4177
                                          dschertler@schertlerlaw.com


                                          /s/ G. Allen Dale
                                          G. Allen Dale, Esquire
                                          *Pro Hac Vice* Counsel
                                          Attorney for Robert Young
                                          601 Pennsylvania Avenue, N.W.
                                          North Building, 9th Floor
                                          Washington, D.C. 20004
                                          Telephone:  (202) 638-2900
                                          Facsimile:  (202) 783-1654
                                          gallendale@aol.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 2nd day of November, 2009, I will electronically file the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to the following:

AUSA Jack Hanly
United States Attorney's Office
2100 Jamieson Avenue
Alexandria, VA 22314
Email: jack.hanly@usdoj.gov

AUSA Steve Linick
United States Attorney's Office
2100 Jamieson Avenue
Alexandria, VA 22314
Email: steve.linick@usdoj.gov

AUSA Andrew Gentin
Trial Attorney
Criminal Division, US Department of Justice
Email:Andrew.gentin@usdoj.gov

/s/ Claire Morris Clark
Claire Morris Clark, Esquire
Virginia Bar Number 73238
Attorney for Robert Young
Schertler & Onorato, LLP
601 Pennsylvania Avenue, N.W.
North Building, 9th Floor
Washington, D.C. 20004
Telephone:  (202) 628-4199
Facsimile:  (202) 628-4177
clark@schertlerlaw.com